UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| TODD J. MEREDITH, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 6:23-cv-888-GMB |
| ) | |
| DONALD C. WALKER, *et al.*, ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiffs Todd J. Meredith and Karen S. Meredith bring claims for breach of contract and declaratory judgment against Defendants Donald C. Walker and Anita Gale Walker arising out of a real property purchase agreement. Doc. 1. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 17. Before the court is the Walkers' Amended Motion to Dismiss Claim for Specific Performance. Doc. 8. For the reasons that follow, the motion is due to be denied.

### I. STANDARD OF REVIEW

The Walkers move for dismissal under Federal Rule of Civil Procedure 12(b)(6), which authorizes the dismissal of some or all of the claims in a complaint if the allegations fail to state a claim upon which relief can be granted. Additionally, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the

claim showing that the pleader is entitled to relief" so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

The court assumes that the factual allegations in the complaint are true and gives the Merediths the benefit of all reasonable factual inferences. *Hazewood v. Found. Fin. Grp., LLC*, 551 F.3d 1223, 1224 (11th Cir. 2008). But "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Nor is it proper to assume that the plaintiffs can prove facts they have not alleged or that the defendants have violated the law in ways that have not been alleged. *Twombly*, 550 U.S. at 563 n.8 (citing *Assoc. Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 526 (1983)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations, brackets, and internal quotation marks omitted). "Factual allegations

must be enough to raise a right to relief above the speculative level . . . ." *Id*. Thus, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'"—that is, its "factual content [must allow] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citations omitted).

## II.  RELEVANT FACTUAL ALLEGATIONS

The Merediths own improved real property located in Walker County, Alabama adjacent to Smith Lake. Doc. 1 at 1 & 3.  The Walkers, through real estate agent Robin Green, made an offer to purchase the Merediths' property and ultimately "agreed to acquire the Smith Lake Property from the Merediths for the purchase price of $2,150,000.00." Doc. 1 at 3.

Green, on behalf of the Walkers, presented the Merediths with a form purchase agreement. Doc. 1 at 3.  The Merediths did not participate in drafting the terms of the purchase agreement. Doc. 1 at 3.  The parties executed the agreement on May 12, 2023, and agreed that the sale would close by June 30, 2023. Doc. 1 at 3–4.  The Walkers then deposited $21,150 in earnest money with the Merediths' real estate agency. Doc. 1 at 4.

Under the contract, the Walkers "had an obligation to determine, whether personally or through Green, any and all conditions of the Smith Lake Property that were material to their decision to purchase the Smith Lake Property," including any

"access easements, covenants, and restrictions." Doc. 1 at 4. The Walkers agreed to complete an inspection of the property's conditions, "including any access to easements, covenants, and restrictions, on or before May 22, 2023." Doc. 1 at 4. And if the "inspection revealed any non-trivial defects," the Walkers had the option to terminate the purchase agreement with written notice to the Merediths within three days of the inspection, or no later than May 25. Doc. 1 at 4. Notwithstanding these provisions, the Walkers did not inspect the covenants or restrictions on the property before May 22 or provide written notice to terminate before May 25. Doc. 1 at 4.

The Walkers completed a general house inspection on May 22 and requested another inspection of the generator and elevator. Doc. 1 at 5. The parties agreed that the Walkers would complete all inspections by May 25 at 12:00 p.m. Doc. 1 at 5. After this inspection, the Walkers negotiated a $20,000 payment in lieu of insisting that the Merediths make certain repairs to the property. Doc. 1 at 5. Neither the Walkers nor Green asked the Merediths or their real estate agent about "rental opportunities or restrictions" for the property, and no representations were made about the same. Doc. 1 at 5.

On June 5, Green asked the Merediths' real estate agent for information on the property's HOA fees and a copy of any covenants or restrictions. Doc. 1 at 6. Then, on June 14, the Walkers, through Green, sent the Merediths a "'Release and Cancellation of Residential Purchase Agreement' effectively asking the Merediths

4

to agree to terminate the Purchase Agreement." Doc. 1 at 6.  The release stated that the Walkers had requested the covenants and restrictions related to the property, but the Merediths gave them a 2010 version instead of the 2018 amended covenants and restrictions. Doc. 1 at 6.  The day before, the Walkers had received the 2018 version of the covenants from another source showing "that short term rentals were not allowed." Doc. 1 at 6.  The Walkers requested a return of their earnest money "[s]ince [they] were not provided with [the] amended covenants and restrictions." Doc. 1 at 6.  The Merediths did not agree to terminate the agreement. Doc. 1 at 6.

On June 26, the Merediths, through their real estate agent, scheduled the closing for June 30. Doc. 1 at 7.  On the same day, Green told the Merediths' agent that her clients "are not going to be closing on June 30, 2023." Doc. 1 at 7.  Although "[t]he Merediths satisfied all conditions precedent," the Walkers "did not close the Purchase Agreement on or before June 30, 2023." Doc. 1 at 7.

In the event of default by the Walkers where all contingencies have been met, the purchase agreement states that the Merediths "at [their] option may claim the earnest money as liquidated damages or may sue for specific performance within their discretion." Doc. 1-1 at 7; *see also* Doc. 1 at 7.  In the event of default by the Merediths, the Walkers "have the right to seek specific performance." Doc. 1-1 at 7.

### III. DISCUSSION

The complaint alleges that the Walkers breached the contract "by failing to

5

close the transaction on or before June 30, 2023." Doc. 1 at 7.  The Merediths contend that they "have fully and fairly complied with their contractual obligations under the Purchase Agreement" and therefore seek "a judgment for specific performance requiring [the Walkers], individually or jointly, to specifically perform by closing on the sale of the Smith Lake Property in conformity with the terms of the Purchase Agreement." Doc. 1 at 8.  The complaint also describes specific performance as the "Second Cause of Action" (Doc. 1 at 8), but the court construes specific performance as a remedy sought in the complaint, not as a separate cause of action.  In the alternative, the Merediths seek compensatory damages, including but not limited to the earnest money held by their agent, "as partial compensation for the actual damages they incurred." Doc. 1 at 9.

Regardless of whether specific performance is a stand-alone claim or a remedy, the Walkers challenge the Merediths' ability to compel specific performance under the purchase agreement and Alabama law.  The Walkers first contend that "specific performance is not available to force the sale of real property under Alabama law." Doc. 8 at 3.  Second, they argue that "[e]ven if specific performance was permitted, that relief is not appropriate where the [Merediths] can be fully compensated via money damages." Doc. 8 at 7.  The court disagrees on both points.

Under Alabama law, "the general standard for remedying a breach of contract

is returning the nonbreaching party to the condition or position he or she would have occupied if the breach had not occurred." *Cooper v. Durham*, __ So. 3d __, 2023 WL 5493255, at *10 (Ala. Aug. 25, 2023). In the context of a contract for real property, "ordinarily the only remedy that can return the nonbreaching party to the position that the party would have occupied if the breach had not occurred is specific performance." *Id.* (citing *Downing v. Williams*, 191 So. 221, 222–23 (1939)). "That is precisely why the law presumes that damages are not an adequate remedy for the breach of a contract involving the sale of real property." *Id.* (citing Ala. Code § 8-1-47 ("It is to be presumed that the breach of an agreement to transfer real property cannot be adequately relieved by pecuniary compensation and that the breach of an agreement to transfer personal property can be thus relieved.")). The court should resort to monetary damages only when "the remedy of specific performance is not appropriate." *Id.*

The Walkers have not shown how the allegations of the complaint or the terms of the purchase agreement make specific performance an inappropriate remedy for the Merediths' claims. Instead, the contract explicitly gives the Merediths the option to sue for specific performance: "Should Buyer Default by Failing to purchase the property as provided herein and all contingencies have been met, then the seller at his/her option may claim the earnest money as liquidated damages or may sue for specific performance within their discretion." Doc. 1-1 at 7. Alabama law is clear

that the court "must follow the plain language of the contract," give the terms of the written agreement "their clear and plain meaning[,] and should presume the parties intended what the terms of the agreement clearly state." *Pub. Bldg. Auth. of City of Huntsville v. St. Paul Fire & Marine Ins. Co.*, 80 So. 3d 171, 180 (Ala. 2010) (citation omitted).

The Walkers nevertheless argue that Alabama Code § 8-1-47 permits only the buyer to sue for specific performance. This argument relies on an interpretation of the statutory language that cannot be squared with the long line of Alabama cases recognizing specific performance as a remedy available to the sellers of real property when the purchasers breach a sale contract. *See, e.g.*, *Cooper*, 2023 WL 5493255, at *10 (recognizing specific performance as the preferred remedy under Alabama law for a seller of real property); *Ala. Processing Co. v. Utilities Bd. of Town of Citronelle*, 527 So. 2d 690, 691 (Ala. 1988) (finding a seller is entitled to specific performance of a contract to sell real estate when the buyer the refuses to go through with the purchase); *Barksdale v. Temerson*, 38 So. 2d 5, 7 (Ala. 1948) (stating that in the real estate context "a bill in equity for specific performance is a recognized method by which the vendor may enforce the contract and recover the stipulated purchase price"); *George E. Wood Lumber Co. v. Morris*, 142 So. 508, 508 (Ala. 1932) ("A vendor of real estate may maintain a bill for specific performance against his purchaser."); *Connor v. Auburn Partner*, 852 So. 2d 755, 760 (Ala. Civ. App.

2002) (finding specific performance is an available remedy for a seller where the purchaser does not complete the purchase of real property). Because the purchase agreement permits the Merediths to sue for specific performance and Alabama law does not disallow specific performance as a remedy, the motion to dismiss is due to be denied.

## IV. CONCLUSION

For these reasons, it is ORDERED that the Motion to Dismiss Claim for Specific Performance (Doc. 8) is DENIED.

DONE and ORDERED on October 31, 2023.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE