UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| TODD J. MEREDITH, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 6:23-cv-888-GMB |
| | ) | |
| DONALD C. WALKER, *et al.*, | ) | |
| | ) | |
| Defendants | ) | |

## MEMORANDUM OPINION

Plaintiffs Todd J. Meredith and Karen S. Meredith filed a complaint against Defendants Donald C. Walker and Anita Gale Walker for the breach of contract relating to the sale of a home on Smith Lake in Walker County, Alabama. Doc. 1. The Walkers answered the complaint and filed counterclaims alleging breach of contract, misrepresentation, and suppression. Doc. 7. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 17. Before the court is the Merediths' motion for judgment on the pleadings. Doc. 24. The motion is fully briefed (Docs. 24, 28 & 29) and ripe for decision. For the reasons that follow, the motion is due to be granted in part and denied in part.

## I.  STANDARD OF REVIEW

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  "Judgment on the

pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." *Hawthorne v. Mac Adj., Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998). In assessing a Rule 12(c) motion, "a court may consider all of the pleadings, including counterclaims and crossclaims, as well as documents attached to the pleadings." *DACSR1 Properties, LLC v. PNC Bank, Nat'l Assoc.*, 2014 WL 12900632 (N.D. Ala. Dec. 1, 2014).

For judgment on the pleadings to be appropriate, the totality of these pleadings and attachments "must be based on undisputed facts appearing in all of the pleadings." *Florists' Mut. Ins. Co. v. Gradco, Inc.*, 2009 WL 10687752 (N.D. Ala. Feb. 27, 2009) (quoting *Stanton v. Larsh*, 239 F.2d 104, 106 (5th Cir. 1957)). In other words, the court accepts as true the factual allegations in the complaint "only where and to the extent they have not been denied or do not conflict with those of the [Defendants'] pleadings." *Id.* at *2.

## II.  RELEVANT FACTS

Consistent with the standard of review, the court considers the language of the Purchase Agreement, which is attached to the complaint, and the facts alleged in the complaint or counterclaims that have been admitted in the answers.  In addition, the Merediths argue that the court should rely on all factual allegations to which the Walkers have responded that the "[t]he terms of the parties' Agreement speak for

themselves." Doc. 24 at 3–4 n.1.  The court does not agree that these responses violate Federal Rule of Civil Procedure 8(b) for two reasons.  First, the Merediths' argument ignores the next sentence in those responses: "To the extent the allegations of this paragraph differ from the terms of the Agreement, those allegations are denied." Doc. 7 at 3–4, 6.  This portion of the response adheres to Rule 8(b).  Second, the Merediths' authority for their position is distinguishable because of the differing procedural postures than the motion before the court. *See Donley v. City of Morrow, Essie W.*, 2013 WL 11330646, at *3 (N.D. Ga. Apr. 3, 2013) (resolving a motion to strike the answer); *Gomez v. United States*, 2010 WL 3834211, at *1 (S.D. Fla. Sept. 28, 2010) (resolving a motion to deem admitted or compel an answer complying with Rule 8).  While the broader legal principles in those cases may be valid, they do not compel the court to treat the Walkers' responses in this case as admissions for purposes of a motion for judgment on the pleadings.  The court now turns to the relevant undisputed facts.

The Merediths own improved real property located in Walker County and adjacent to Smith Lake. Doc. 1 at 1 & 3; Doc. 7 at 2, 11; Doc. 14 at 1.  The Walkers, through their real estate agent Robin Green, made an offer to purchase the Merediths' property. Doc. 1 at 3; Doc. 7 at 3; *see also* Doc. 1-1 at 2.  On May 12, 2023, the parties executed a Purchase Agreement. Doc. 1 at 3–4; Doc. 7 at 3; Doc. 1-1 at 2, 7, 11; Doc. 14 at 1.  Under the terms of that agreement, the Walkers

agreed to pay $2,150,000 in cash to the Merediths with no financing contingency. Doc. 1 at 4; Doc. 7 at 3; Doc. 1-1 at 2.  The Walkers deposited $21,150 in earnest money with the Merediths' real estate agency and the agency retains the earnest money to date. Doc. 1 at 4; Doc. 7 at 3.  The Purchase Agreement provided for the sale to close on or before June 30, 2023. Doc. 1-1 at 2; Doc. 1 at 3–4; Doc. 7 at 3.  It also gave the Walkers "a reasonable length of time within which to perfect title or cure defects in the title to the property." Doc. 1-1 at 2 (emphasis removed).

Under section 9, titled "Condition of the Property," the Walkers had "an obligation to determine, whether personally or through [Green], any and all conditions of the Property material to [their] decision to purchase the Property, including without limitation, . . . access easements, covenants, restrictions, or development structures." Doc. 1-1 at 3.  The section concludes with a provision stating that the Walkers "have the opportunity and the obligation to determine the condition of the Property in accordance with Section 11[1] below." Doc. 1-1 at 3.

Section 10 of the Purchase Agreement details the "Inspection Contingencies." Doc. 1-1 at 4–5.  In this section, the Walkers "acknowledge[] and agree[] that Alabama law imposes a duty on [them] to thoroughly inspect the property, for defects or otherwise, in accordance with the terms of this contract and prior to

---

[1] In their answer to the counterclaims, the Merediths assert that this reference to Section 11, the contract's "Hold Harmless" provision, is a typographical error made by the Walkers' agent, who drafted the contract. Doc. 14 at 2.

closing the sale." Doc. 1-1 at 4.  The Walkers checked a box electing to have a home inspection so that they could "identify and be satisfied with the condition of the property." Doc. 1-1 at 4.  The Purchase Agreement required the Walkers to "inspect or investigate the property within 10 calendar days . . . of the final contract acceptance date," or on or before May 22, 2023. Doc. 1 at 4.  If the inspection revealed any non-trivial, insignificant, or obvious defects, the Walkers had the option to "(a) accept the property in its current condition, or (b) accept the property with specified repairs . . . , or (c) terminate" the Purchase Agreement with written notice to the Merediths within three days of the inspection, or no later than May 25. Doc. 1-1 at 5.

Section 11 of the Purchase Agreement is a Hold Harmless provision assuring that the sellers and buyers will hold their agents harmless in the event of damages during any inspection. Doc. 1-1 at 5.  It also states that the "Buyer(s) understands and agrees that real estate licensees lack the expertise to determine the condition of a property, and therefore, Buyer(s) will not rely on any statements or omission made by the real estate licensee regarding the condition of the property." Doc. 1-1 at 5.

The Walkers completed a general house inspection on May 22, 2023, and the parties agreed that the Walkers would complete any other inspections by May 25 at noon. Doc. 1 at 5; Doc. 7 at 4.  After the inspections, the Walkers negotiated a $20,000 reduction in their liability at the closing in lieu of the need for the Merediths

to make repairs to the property. Doc. 1 at 5; Doc. 7 at 4; Doc. 1-1 at 8.  Neither the Walkers nor their agent provided written notice to terminate the Purchase Agreement before May 25. Doc. 1 at 4; Doc. 7 at 4.

On or about June 5, the Walkers' agent asked the Merediths' agent[2] for documentation of the property's HOA fees and a copy of the relevant covenants and restrictions. Doc. 1 at 6; Doc. 7 at 5, 12; Doc. 14 at 3.  Although the Walkers allege that the Merediths "provided the Walkers or their agent with a partial, incomplete set of the applicable covenants" (Doc. 7 at 12), the Merediths admit only that their agent sent the Walkers "a version of applicable covenants." Doc. 14 at 3.  It is undisputed, however, that "all covenants and restrictions related to the property are public record and available for public review in Walker County, Alabama." Doc. 1 at 5; Doc. 7 at 5.

The applicable covenants included a restriction on short-term rentals of the property. Doc. 7 at 15; Doc. 14 at 6.  On June 14, the Walkers, through Green, sent the Merediths a document titled "Release and Cancellation of Residential Purchase

---

[2] In their counterclaim, the Walkers allege that "the Walkers or their agent requested from the Sellers or their agent a copy of any applicable covenants or restrictions related to the property." Doc. 7 at 12.  The Walkers admit in their answer that the Merediths' agent received the request for covenants from their agent (Doc. 1 at 6; Doc. 7 at 5), but affirmatively state that they did not request copies of the covenants or restrictions directly from the Merediths. Doc. 1 at 4 & 5; Doc. 7 at 4 & 5.

Agreement." Doc. 1 at 6; Doc. 7 at 5.[3]  The Merediths did not agree to terminate the

agreement. Doc. 1 at 6; Doc. 7 at 5, 13; Doc. 14 at 4.  The Walkers did not close on

the property by June 30. Doc. 1 at 7.[4]  The Walkers later made a written demand for

the Merediths to return the earnest money, but the Merediths refused. Doc. 7 at 13;

Doc. 14 at 4.

     In the event of default by the Walkers where all contingencies had been met,

the Purchase Agreement states that the Merediths "at [their] option may claim the

earnest money as liquidated damages or may sue for specific performance within

their discretion." Doc. 1-1 at 7; *see also* Doc. 1 at 7; Doc. 7 at 6.  In the event of

default by the Merediths, the Walkers "have the right to seek specific performance."

Doc. 1-1 at 7; *see also* Doc. 1 at 7; Doc. 7 at 6.

### III.  DISCUSSION

     The Merediths claim that the Purchase Agreement is a valid and enforceable

contract, that the Walkers breached it, and that the court should award specific

performance as the remedy.  The Walkers' counterclaims, on the other hand, assert

---

[3] The Walkers' answer states that "[t]he Release provided to the [Merediths] speaks for itself.  To the extent the allegations of this paragraph differ from the terms of the Release, those allegations are denied." Doc. 7 at 5.  Because the release is not attached to the complaint, the court deems all of the factual allegations in the complaint about the terms of the release to have been denied.

[4] The court deems this statement in the complaint to be admitted by the Walkers.  Although the answer states that "the terms of the parties' Agreement speak for themselves" and otherwise denies this allegation (Doc. 7 at 6), that answer is not responsive to the allegation in the complaint.  Moreover, the brief in opposition to the motion for judgment on the pleadings admits that "[t]here is no dispute the Walkers did not purchase the real property at issue here . . . by June 30, 2023." Doc. 28 at 1.

that the Merediths breached the agreement and misrepresented or suppressed facts material to the purchase.  The Merediths argue that they are entitled to judgment on the pleadings both on their breach of contract claim and on the Walkers' counterclaims.

## A.    Breach of Contract

"The elements for a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Dupree v. PeoplesSouth Bank*, 308 So. 3d 484, 490 (Ala. 2020) (citations omitted).  The parties do not dispute that they entered into a valid agreement for the Smith Lake property. But both the Merediths and the Walkers contend that the others breached the contract; the Merediths claim the Walkers breached the contract when they failed to close by June 30, 2023 (Doc. 24 at 10), while the Walkers claim the Merediths breached the contract (1) by refusing to terminate the contract when they were unable "to clear title sufficient for the intended use of the Property by the Walkers" and (2) by failing to return the Walkers' earnest money. Doc. 7 at 13.

The motion for judgment on the breach of contract claim ultimately boils down to whether the Walkers had the unilateral right to terminate the Purchase

Agreement.[5]  If they did not, the Merediths' breach of contract claim succeeds.  If they did, the Walkers were entitled to terminate the agreement and recoup their earnest money.  The court finds that the pleadings do not resolve every question of fact relevant to this fundamental question, thus precluding judgment as a matter of law.

The Merediths claim that the Walkers did not have a right under the terms of the Purchase Agreement to terminate the contract because they did not comply with the deadlines in the inspection provisions. Doc. 29 at 6.  The Walkers claim that "[t]he inspection provisions relied upon by the Sellers for the purported breach by the Walker do not address the timing for due diligence, discovery, or cure of title-related issues." Doc. 7 at 11.

The Purchase Agreement imposes a specific deadline for the Walkers to conduct a home inspection to ensure their "satisf[action] with the condition of the property." Doc. 1-1 at 4.  The section defining the "condition of the property" in turn references the "Property access easements, covenants, restrictions or development structures." Doc. 1-1 at 3.  And it is undisputed that the Walkers did not notify the Merediths of their decision to terminate the contract before the inspection deadline. The Merediths would like the court to stop there, but it is not clear from the terms of

---

[5] The court reserves a ruling on the other issues developed in briefing because they are not essential to the resolution of the pending motion.

the Purchase Agreement and the undisputed facts before the court that the inspection deadline applies to the Walkers' request to terminate the contract. The Purchase Agreement obligated the Walkers "to determine the condition of the Property in accordance with 'Section 11' below." Doc. 1-1 at 3. Section 11, however, is the Hold Harmless provision—not the inspection contingency provision with its deadlines. While the Merediths contend that the reference to Section 11 is a typographical error made by the Walkers' agent (Doc. 14 at 2), even a typographical error introduces a factual ambiguity into the contract that the court cannot resolve on a motion for judgment on the pleadings.[6] For this reason, there are questions of fact preventing judgment on the pleadings as to the breach of contract claims.

## B.    Misrepresentation and Suppression

The Walkers assert counterclaims against the Merediths for misrepresentation and suppression. Doc. 7 at 11–18. These claims are factually similar and have overlapping legal standards. A misrepresentation claim under Alabama law requires a plaintiff to show "(1) that the representation was false, (2) that it concerned a material fact, (3) that the plaintiff relied on the false representation, and (4) that actual injury resulted from that reliance." *Boswell v. Liberty Nat. Life Ins. Co*., 643

---

[6] Elsewhere in the provisions relating to inspection contingencies, if they do apply here, the Purchase Agreement states that the Walkers have a duty to inspect the property "in accordance with the terms of this contract and prior to closing the sale." Doc. 1-1 at 4. This term arguably contradicts the home inspection provision's 10-day deadline unless the Merediths prove that the latter provision supersedes or qualifies the former. This question also cannot be resolved as a matter of law at this stage of the proceedings.

So. 2d 580, 581 (Ala. 1994).  A claim for suppression does not depend on a false representation.  Instead, a plaintiff must show "(1) a duty on the part of the defendant to disclose facts; (2) concealment or nondisclosure of material facts by the defendant; (3) inducement of the plaintiff to act; (4) action by the plaintiff to his or her injury." *Freightliner, LLC v. Whatley Cont. Carriers, LLC*, 932 So. 2d 883, 891 (Ala. 2005) (quoting *Lambert v. Mail Handlers Benefit Plan*, 682 So. 2d 61, 63 (Ala. 1996)).

Parties alleging fraudulent misrepresentation or suppression claims under Alabama law must establish that they reasonably relied on the defendant's fraudulent conduct. *See Sandoz, Inc. v. Alabama*, 100 So. 3d 514, 527 (Ala. 2012) ("A plaintiff's purported reliance in an action alleging misrepresentation or suppression must be reasonable."); *see also Johnson v. Sorensen*, 914 So. 2d 830, 837 (Ala. 2005) ("[I]t is clear that a plaintiff's reasonable reliance is an essential element of a suppression claim."). In *Foremost Insurance Company v. Parham*, 693 So. 2d 409, 421 (Ala. 1997), the Alabama Supreme Court held that Alabama's reasonable reliance standard permits courts to grant judgment as a matter of law based on constructive notice:

> [T]he "reasonable reliance" standard will once again provide a mechanism . . . whereby the trial court can enter a judgment as a matter of law in a fraud case where the undisputed evidence indicates that the party or parties claiming fraud in a particular transaction were fully capable of reading and understanding their documents, but nonetheless made a deliberate decision to ignore written . . . terms.

Here, it is undisputed that the restrictive covenant precluding short-term rentals had been recorded in the Probate Court of Walker County, Alabama. Doc. 7 at 5, 15.  Under Alabama law, "the proper recordation of an instrument constitutes conclusive notice to all the world of everything that appears from the face of the instrument.  Thus, purchasers of real estate are presumed to have examined the title records and knowledge of the contents of those records is imputed [to them]." *Boyce v. Cassese*, 941 So. 2d 932, 943 (Ala. 2006) (internal quotation marks and citations omitted); *see also* Ala. Code § 35-4-90(a) (stating that real estate buyers are not deemed to have notice of an instrument unless it is recorded); *Willow Lake Res. Assoc., Inc. v. Juliano*, 80 So. 3d 226, 237 (Ala. Civ. App. 2010) (finding an individual is "charged by law with notice of the contents of those covenants because the restrictive covenants were recorded in the appropriate probate court"); *Ellis v. City of Montgomery*, 460 F. Supp. 2d 1301, 1306 (M.D. Ala. 2006) ("In Alabama, as in most States, transfers of land and encumbrances on land are recorded in the probate office; future interest-holders are then said to be on 'record notice' when real property undergoes a change in ownership or becomes encumbered."). Accordingly, the Walkers' constructive knowledge of the covenant precluded them from relying on anything the Merediths said or did not say about the covenant. *See Kaye v. Pawnee Const. Co., Inc*., 680 F.3d 1360, 1371 (11th Cir. 1982) ("At least where there is not a confidential relationship, it is anomalous, if not frivolous,

to fault another (on allegations of suppression of facts) for failure to supply information that is freely available by examination of the public records maintained under state recording acts whose purpose is to give notice to persons who may be affected.").

Alabama courts strictly apply this rule.  For example, in *Boyce*, 941 So. 2d at 945, the Alabama Supreme Court affirmed summary judgment on a suppression claim based on a real estate buyers' constructive notice of a license agreement even though the agreement was not filed in the probate court until after the execution of the purchase agreement and only four days before the closing.  The court nevertheless concluded that the buyers could not "now complain that the [sellers] suppressed from them the existence of the license agreement when that agreement was publicly and properly recorded four days before the [buyers] purchased the property." *Id.*  Similarly, in *Willow Lake*, 80 So. 3d at 237–38, the Alabama Court of Civil Appeals concluded that the buyers had constructive notice of a subdivision's restrictive covenants notwithstanding their lack of actual notice before the transaction was consummated. *Id*. at 237–38 ("Regardless of the failure of the Association to fulfill its self-imposed custom of delivering an actual copy of the restrictive covenants to new homeowners in the subdivision, the Julianos were charged by law with notice of the contents of those covenants because the restrictive covenants were recorded in the appropriate probate court . . . .").  In both cases, the

buyers' constructive knowledge precluded their claims.  The result is the same here, and the Walkers' counterclaims for misrepresentation and suppression fail as a matter of law.

### IV.  CONCLUSION

For these reasons, it is ORDERED that the Motion for Judgment on the Pleadings (Doc. 24) is GRANTED in part and DENIED in part as follows:

1.     The motion is GRANTED as to the counterclaims for misrepresentation and suppression.

2.     The motion is DENIED as to breach of contract claim and counterclaim.

DONE and ORDERED on May 1, 2024.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE